# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

FEDERAL DEPOSIT INSURANCE )
CORPORATION, as Receiver for FIRST )
NATIONAL BANK OF NEVADA, )
successor-in-interest by merger to FIRST )   Case No.: 2-11-cv-00386-GMN-LRL
NATIONAL BANK OF ARIZONA, N.A., )
a national banking association, )            **ORDER**
)
              Plaintiffs, )
vs. )
)
LAKE ELSINORE 521, LLC, a Nevada )
limited liability company; BRADLEY F. )
BURNS, an individual; and DOES 1 )
through 100 inclusive, )
)
             Defendants. )
)

## INTRODUCTION

Before the Court is Plaintiff, Federal Deposit Insurance Corporation's (FDIC) Motion to Quash Writ of Execution and to Compel Satisfaction of Judgment (ECF No. 19). Defendant Bradley F. Burns filed an Opposition to the Motion to Quash (ECF No. 25). A hearing was held on the motion on April 20, 2011.

## FACTS AND BACKGROUND

FDIC is the receiver for First National Bank of Nevada the successor-in-interest by merger to First National Bank of Arizona, N.A., a national banking association. Bradley Burns is a judgment creditor against FDIC. Mr. Burns received a final judgment against FDIC when the United States District Court, Central District of California, granted him an award of attorney's fees in March 2009 (*See* Civil Minutes, ECF No. 1). When FDIC failed to satisfy the judgment, Mr. Burns filed a Certification of Judgment

for Registration in this Court on February 10, 2011 (ECF No. 1). A Writ of Execution in favor of Mr. Burns and against FDIC in the amount of $116,491.76 was issued by the clerk on February 24, 2011 (ECF No. 7). A Notice of U.S. Marshal's Sale of Personal Property was also issued, scheduling the sale of the FDIC's personal property for April 26, 2011 (Notice of Marshal's Sale, Ex. 3, ECF No. 19). More specifically, Plaintiff is seeking to sell all rights, title and interest in FDIC's choses in action, causes of action and claims brought in the United States District Court, District of Nevada Case No. 2:08-cv-01571-PMP-GWF, entitled *Federal Deposit Insurance Corporation v. Jason Halpern, et al.* as Mr.Burns is a named defendant in that case.

In Response, FDIC filed a request for a 90-day stay pursuant to 12 U.S.C. § 1821 (d)(12)(A)(ii) in order to assess the claims and consider an issuance of a Receiver's Certificate (ECF No. 9). The stay was denied by this Court (ECF No. 23). On March 22, 2011, the FDIC issued a Receivership Certificate of Proof of Claim to Bradley Burns in an attempt to satisfy the March 2009 Judgment at issue in this litigation. An acknowledgment of service executed by Mr. Burns' Attorney states that he received the receivership certificate on April 12, 2011 (ECF No. 20).

FDIC brings the instant emergency motion requesting that this Court quash the writ of execution and issue an order prohibiting the Marshal from continuing with the sale of personal property identified in the Notice of Sale (ECF No. 19). The FDIC further requests that the Court issue an order compelling Mr. Burns and his attorneys to acknowledge that the Receiver's Certificate which was eventually issued by FDIC to Mr. Burns - two years after the judgment was entered in U.S. District Court in the Central

/ / /

/ / /

/ / /

District of California - constitutes full satisfaction of the judgment. (*Id.*)

## DISCUSSION

**A.     Motion to Quash**

Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) in 1989 in response to the nation's banking crisis. *See Battista v. F.D.I.C.*, 195 F.3d 1113, 116 (9th Cir. 1999). "The statute 'allows the FDIC to act as receiver or conservator of a failed institution for the protection of depositors and creditors' . . . establishing a scheme for dealing with claims against the failed institution." *Id.* (citing *Sharpe v. FDIC,* 126 F.3d 1147, 1154 (9th Cir. 1997)). "Section 1821(d) of the FIRREA outlines the powers and duties of the FDIC as conservator or receiver, authorizing the agency to, *inter alia*, determine and pay claims against the financial institution in accordance with the subsection's requirements. Subsections 1821(d)(3)–(6) set forth the procedures for the determination of claims, and § 1821(d)(11) establishes a distribution priority for claims to the financial institution's assets." *Id.*

12 U.S.C. § 1821(d)(13)(C) states, "[n]o attachment or execution may issue by any court upon assets in the possession of the receiver." Congress's purpose in enacting § 1821(d)(13)(C) is to avoid interference with the receiver's ability to dispose of assets and preclude post-receivership improvement of position. *See Resolution Trust Corp. v. Cheshire Mgmt. Co., Inc.*, 18 F.3d 330, 334 (6th Cir. 1994)(citing *GWN Petroleum Corp. v. OK-Tex Oil & Gas, Inc.*, 998 F.2d 853, 857 (10th Cir.1993) (§§ 1821(d)(13)(C) and 1825(b)(2) prohibit any "ancillary remedy in aid of execution to obtain payment of a judgment")).

Mr. Burns makes two arguments regarding why the writ of execution is proper in this case despite FIRREA's clear language that "[n]o attachment or execution may issue by any court upon assets in the possession of the receiver." First, Mr. Burns argues that

FIRREA is not applicable in this action as a whole and second, that the chose in action is not a "possessory thing" such that it is not encompassed by section 1821(d)(13)(C).

Mr. Burns argues that he is not a creditor or depositor as envisioned by Congress when enacting the statute and as such the statute should not apply similar to the holding in *Sharpe v. FDIC,* 126 F.3d 1147 (9th Cir. 1997). In *Sharpe*, the plaintiffs entered into a settlement agreement with the bank before FDIC took over as a receiver. Under the terms of the settlement agreement the bank was to pay a sum of money by wire transfer to the plaintiffs and the plaintiffs would deliver a note and purchase money deed of trust with a request for reconveyance of the deed of trust. The agreement contemplated a simultaneous exchange of funds. Instead of the money transfer, the bank paid the sum with two cashier's checks. The day after this exchange the FDIC was appointed receiver for the bank. FDIC notified plaintiff that the cashier's checks would not be honored and provided the plaintiffs with the proof of claim form. The court held that this breach of the settlement agreement was a breach of contract and outside the realm of FIRREA. In doing so the court examined the relationship of the parties and found that the plaintiffs were not creditors or depositors of the bank. The plaintiff's possession of the cashier's check did not occur in the "usual course of business" and but for the settlement agreement the plaintiffs would not have had a relationship with the failed institution.

The facts of *Sharpe* are distinguishable from the facts of this case. While Mr. Burns became a creditor of FDIC because of the action brought by FDIC, Mr. Burns was a debtor before that suit ever arose. *See McCarthy v. FDIC*, 348 F.3d 1075 (9th Cir. 2003) (holding that FIRREA's exhaustion requirement applies to debtors as well as creditors)). Thus Mr. Burns has had an ongoing relationship with the insolvent bank outside of the current litigation.

Further there is additional Ninth Circuit authority that leads the Court to find that

FIRREA applies to the facts of this case.  In *RTC v. Titan Financial Corporation*, 36 F.3d 891 (9th Cir. 1994), the court was faced with a question of whether FIRREA authorizes a receiver to use a receiver's certificate to pay creditors.  The creditor in *Titan*, Sellan, was a personal guarantor of a promissory note which was defaulted on by the principal debtor.  The receiver sued Sellan, as the personal guarantor, seeking a deficiency judgment.  Sellan was granted summary judgment and awarded attorney's fees.  The receiver wanted to pay Sellan with a receiver's certificate instead of with cash.  While there is no indication in the statute that a receiver's certificate may be used to pay creditors the court held that it may.  The court reasoned that the receiver's certificates should be allowed under the comprehensive procedures established by FIRREA because to hold otherwise would be to allow the creditor to "jump the line." *Id.* at 892.

Sellan in *Titan* was considered a creditor under the rules and procedures of FIRREA.  The suit that FDIC brought against Sellan made Sellan a creditor.  As a creditor of the receiver, Sellan was forced to abide by the statutory procedures established to allow equitable distribution of an insolvent bank's assets.  Similarly, Mr. Burns is a creditor of FDIC because the insolvent bank filed suit against Mr. Burns.  Mr. Burns' claims therefore should be treated as arising under FIRREA.

Finally, the plain language of section 1821(d)(13)(C) states "[n]o attachment or execution may issue by any court upon the assets in possession of the receiver."  There is no limitation that this applies only to a creditor, depositor, or debtor.  Thus the court is not allowed to issue any attachment or execution to any assets in the possession of the receiver regardless of the claim.

This leads the court to Mr. Burns' second argument against quashing the writ of execution.  Mr. Burns argues that the chose in action is not a "possessory thing" such that it is not covered under 12 U.S.C. § 1821(d)(13)(C). *See Applied Med. Techs., Inc. v.*

*Eames*, 44 P.3d 699, 701-02 (Utah 2002).  Mr. Burns claims that presently the FDIC's chose in action is merely a right to sue that may have no value once it is litigated. However, the court finds that the chose is action is an asset of FDIC. *See FDIC v. Main Hurdman*, 655 F. Supp. 259 (E.D.Cal. 1987).  The court in *Main Hurdman* considered a chose in action an asset of the bank that was assignable to the FDIC.  As an asset that was assigned to FDIC upon FDIC assuming the receivership the chose in action became its possession.

Accordingly the Court finds that the Writ of Execution was issued improperly and must be quashed.

**B.     Satisfaction of Judgment**

FDIC argues that as receiver of a failed institution it may pay creditors with receiver's certificates instead of cash. *Battista v. FDIC*, 195 F.3d 1113, 1116 (9th Cir. 1999)(citing to *Titan*, 36 F.3d at 891(per curium)). "Section 1821(d)(10)(A) authorizes the FDIC, as receiver, to "pay creditor claims ... in such manner and amounts as are authorized under this chapter."  In *Titan,* the court reasoned that the FDIC may use receiver's certificates as its manner of payment because requiring cash payments would subvert the comprehensive scheme of FIRREA, including § 1821(i)(2)'s limitation on an unsecured general creditor's claim to only a pro rata share of the proceeds from the liquidation of the financial institution's assets. *See Titan,* 36 F.3d at 892 (citing *Franklin Bank v. FDIC,* 850 F.Supp. 845 (N.D.Cal.1994)).  To require the FDIC to pay certain creditors in cash would unfairly allow those creditors to "jump the line," recovering more than their pro rata share of the liquidated assets, if the financial institution's debts exceed its assets. *See id.*

However, counsel for FDIC conceded at the April 20, 2011 hearing that this Court could require FDIC to satisfy the Judgment with a cash payment.  The Court agrees and

finds that the conduct of FDIC after the Central District of California Judgment was issued against it constitutes bad faith.  Mr. Burns timely submitted a Proof of Claim to FDIC seeking payment of the award of attorney's fees and costs on May 13, 2009.  FDIC apparently abused the statutory stay provision which was meant to provide FDIC with an opportunity to acquaint itself with its predecessor's claims.  FDIC invoked the stay provision and delayed processing Mr. Burns' claim beyond the usual 180 days despite the fact that FDIC was always a party to the Central District of California lawsuit and was therefore already familiar with the facts and circumstances resulting in the Judgment.

On February 4, 2010 - more than 240 days later - FDIC disallowed Mr. Burns' claim.  FDIC further failed to provide any explanation to Mr. Burns as to why his claim to collect on the Court's Judgment was not honored.  If the form of the claim was unsatisfactory, FDIC failed to provide Mr. Burns an opportunity to cure any technical defect.  Instead, FDIC merely issued a notice that Mr. Burns must file a lawsuit within sixty days to prevent the denial of the claim from becoming final.  Ultimately, Mr. Burns was forced to incur additional attorney's fees and costs and file suit in the United States District Court, District of Nevada on April 5, 2010 to preserve his right to collect on the Judgment (*See* Case No. 2:10-cv-00468-RCJ-RJJ).

Burns filed a Certificate of Judgment for Registration in this action on February 10, 2011.  However, FDIC still refused to issue a receiver's certificate to satisfy payment.  Only after Mr. Burns obtained a Writ of Execution did FDIC finally decide to attempt to satisfy the outstanding Judgment with a receiver's certificate.  FDIC finally issued a receiver's certificate on March 22, 2011 to satisfy the judgment against it.  This is unsatisfactory in the Court's view.  For over two years, FDIC refused to make any payment on the court ordered judgment.  As a result of the FDIC's dilatory tactics, Mr. Burns has been deprived of any and all dividends that he would have obtained had the

receiver's certificate been issued timely two years ago.

Ordinarily requiring a cash payment would subvert the comprehensive scheme of FIRREA, but when a receiver abuses its position to defiantly avoid paying a court ordered judgment, such conduct is contemptuous. Therefore, a cash payment is the only appropriate remedy. Accordingly, the Court finds that the Judgment cannot be appropriately satisfied in this case by the issuance of a receiver's certificate. The special circumstances presented in this case require this Court to fashion an otherwise extraordinary resolution to remedy the injustice created by FDIC's conduct. Therefore, the Court hereby Orders that FDIC shall pay Mr. Burns in cash to satisfy the Central District of California Judgment.

The Court will additionally entertain a motion for attorney's fees and costs incurred in this case and whether such sanctions should be imposed against FDIC directly, to be satisfied out of the agency's funds for conduct beyond the permissible scope of its receivership duties.

## CONCLUSION

**IT IS HEREBY ORDERED** that FDIC's Motion to Quash is **GRANTED**.

**IT IS FURTHER ORDERED** that the U.S. Marshal is directed to **vacate the sale scheduled for April 26, 2011.**

**IT IS FURTHER ORDERED** that the FDIC's Motion to Compel Satisfaction of Judgment is **DENIED**.

**IT IS FURTHER ORDERED** that FDIC must pay cash to Mr. Burns in order to satisfy the Judgment within thirty (30) days of the date of this Court's Order.

DATED this 22nd day of April, 2011.

_____
Gloria M. Navarro
United States District Judge